# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **MARY ANGELA JOHNSON,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.: 2:16-cv-01459-RDP** |
| | } | |
| **JEFFERSON COUNTY, ALABAMA, et al.,** | } | |
| | } | |
| | } | |
| **Defendants.** | } | |

## <u>MEMORANDUM OPINION</u>

This matter is before the court on the following motions: Defendants Godwin and City of Homewood's Motion to Dismiss (Doc. # 33); Defendants Mike Hale and Dwight Sloan's Motion to Dismiss (Doc. # 36); Defendants Blackmon, Ferguson, Hampton, Newland, Ross, and Shoupe's Motion to Dismiss (Doc. # 51); and Defendants Mayes, Scott, and Therrell's Motion to Dismiss (Doc. # 52). The issues raised therein have been fully briefed by the parties (Docs. # 34, 26, 43, 44, 47, 60, 61, 63, 64), and are now ripe for decision.

## I. Background[1]

Plaintiff's Second Amended Complaint (Doc. # 29) asserts the following causes of action: Count One[2] -- "Violation of Civil Rights" (the court has construed Plaintiff's complaint

---

[1] In evaluating a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court assumes the factual allegations in the complaint are true and gives the plaintiff the benefit of all reasonable factual inferences. *Hazelwood v. Found. Fin. Grp., LLC*, 551 F.3d 1223, 1224 (11th Cir. 2008). A plaintiff's allegations may or may not be the "actual facts" in a case, but they are accepted as true for the purposes of evaluating a motion to dismiss. Accordingly, the facts set out herein are taken from Plaintiff's Second Amended Complaint (Doc. # 29), and they are assumed true for the purposes of this Memorandum Opinion.

[2] The court construes Count One of Plaintiff's Second Amended Complaint to seek relief against all Defendants. Plaintiff alleges that Defendants denied Plaintiff "the right to live peacefully in the community with protection from abuse, equal protection under the law, and without harassment or embarrassment . . . obstruction of justice . . . [and] retaliation." (Doc. # 29 at 33).

liberally, and the addresses a number of potential constitutional violations below) (*Id.* at 32);

Count Two[3] -- "Violation of Civil Rights Through State Policy and Practice" (*Id.* at 33); and

Count Three[4] -- "Prayer for Injunctive Relief" (*Id.* at 34).

Plaintiff[5] Mary Angela Johnson ("Plaintiff") moved to Homewood, Alabama in July of

2012. (*Id.* at 3). Soon after, Plaintiff began dating Alex Hirschfield ("Hirschfield"). (*Id.*). In the

following weeks, Plaintiff's vehicle was involved in a motor vehicle accident while being driven

by Hirschfield. (*Id.*). At Hirschfield's request, Plaintiff sent her vehicle to "Chico's Body Shop,"

which was owned by Hirschfield's friend, Monty Klanaris ("Klanaris"). (*Id.*). Two weeks later,

upon learning that her insurance company had not received a claim from "Chico's Body Shop,"

Plaintiff met Klanaris in Montgomery to retrieve her vehicle. (*Id.* at 3-4). When Plaintiff

received the vehicle, the repairs she requested were poorly done and there were additional repairs

made that she did not request. (*Id.* at 4, 27). Additionally, Plaintiff discovered items were

---

[3] While Count Two of Plaintiff's Second Amended Complaint purports to seek relief against all Defendants, it asserts a claim based on state and/or municipal liability, and may only be brought against a state, municipality, or policymaker (*i.e.*, Defendants Jefferson County, City of Homewood, and Mike Hale). Plaintiff alleges Defendants "maintain a policy or custom of failing to train its police officers adequately and reasonably regarding rights of residents . . . refusing to educate its police officers regarding victim's rights and retaliation . . . failing to adequately investigate crimes . . . [and] refus[ing] equal protection and rights to women and minorities." (*Id.*).

[4] Count Three of Plaintiff's Second Amended Complaint can be construed to seek relief against all Defendants. Plaintiff alleges that Defendants denied her "equal protection," failed to protect "victim's rights against retaliation," and subjected Plaintiff to harassment, abuse, illegal searches, and false arrests." (*Id.* at 34-35).

[5] Plaintiff originally brought this action as the only Plaintiff. However, in her subsequently amended complaints, Plaintiff purportedly alleged claims made on behalf of her minor children. (*See* Docs. # 26, 29). It is axiomatic that a *pro se* litigant may represent herself, but is not entitled to represent the causes or interests of others. *See Timson v. Sampson*, 518 F.3d 870, 873 (11th Cir. 2008) (citing 28 U.S.C. § 1654); *Palazzo v. Gulf Oil Corp.*, 764 F.2d 1381, 1384 (11th Cir. 1985). Accordingly, the court does not address the claims and arguments purportedly made on behalf of Plaintiff's children, and refers to Mary Johnson as the lone Plaintiff in this action.

Moreover, even if the court were to consider the claims purportedly raised on behalf of Plaintiff's children, they are due to fail. As addressed below, much of the conduct complained of is barred by the statute of limitations. Moreover, to the extent that Plaintiff asserts that her entire family was harmed by Defendants failure to investigate her criminal complaints, such claims are due to be denied for the reasons detailed below.

missing from her vehicle. (*Id.*). Plaintiff contacted Hirschfield with a new estimate for the cost of repairs and accused him of "trying to scam her." (*Id.*).

Following this encounter, Hirschfield began to harass Plaintiff, slashed the tires on her vehicle, and poured acid into her vehicle's gas tank. (*Id.*). Plaintiff filed a police report with the Homewood Police Department ("HWPD") which accused Hirschfield of attempting to destroy evidence of the faulty car repairs and retaliating against Plaintiff. (*Id.*). The case was assigned to Detective Shoupe. (*Id.*). Hirschfield continued to stalk and harass Plaintiff, and made further attempts to damage her vehicle. (*Id.* at 4). Plaintiff reported these incidents of stalking and harassment to the HWPD, Detective Shoupe, and the Homewood Magistrate. (*Id.* at 4-6, 27). However, Detective Shoupe, the HWPD, and the Homewood Magistrate did not investigate the claims or otherwise protect Plaintiff from the actions of Hirschfield. (*Id.* at 5-6, 27).

In 2012, Plaintiff was involved in a verbal altercation with an unknown male in the parking lot of Publix Super Market in Homewood. (*Id.* at 5, 27). During the altercation, the man produced a knife and threatened Plaintiff. (*Id.*). HWPD officers took a report of the incident and allowed the man who had threatened Plaintiff to leave. (*Id.*). The officers instructed Plaintiff to "see the Magistrate about it" and refused to investigate the matter. (*Id.*).

Plaintiff moved to another residence within the city of Homewood in November 2012. (*Id.* at 6, 27). Hirschfield continued to harass and stalk Plaintiff at her new residence. (*Id*). Plaintiff reported Hirschfield's actions to the HWPD; however, the responding officer refused to make a report. (*Id.*).

Soon after moving to her new residence, Plaintiff began contacting the City of Homewood and the Mayor of Homewood regarding her neighbor's retention wall, which had collapsed onto her property. (*Id.* at 7, 27). The City (and Mayor) did not help to correct the

problem. (*Id.*). Following Plaintiff's request, the City of Homewood began to harass her by "trespassing on her property, confronting her in a threatening manner, leaving letters . . . refusing to pick up trash, and ignoring subpoenas to appear in civil court." (*Id.*). When Plaintiff attempted to correct the damage done to her property by the collapsed wall, her neighbors accused her of trespassing on their property. (*Id.*). Homewood police officers responded to one of Plaintiff's neighbor's calls by gathering in front of her home, which intimidated and embarrassed Plaintiff. (*Id.*). Plaintiff continually reported her neighbors' harassment to the HWPD, including the construction of structures on her property. (*Id.* at 7-8, 27). HWPD did not investigate this harassment. (*Id.*). Plaintiff has filed complaints with the HWPD against its officers for refusing to make reports at Plaintiff's request and threatening Plaintiff. (*Id.* at 8).

Plaintiff's daughter suffered a brain injury on August 13, 2013. (*Id.* at 8, 28). As a result, Plaintiff's daughter was excused from participating in gym class by a doctor. (*Id.*). On August 27, 2013, Plaintiff was notified by her daughter's gym teacher that Plaintiff's daughter had been allowed to participate in gym class, which gave her a headache. (*Id.*). The gym teacher did not notify Plaintiff of her daughter's headache, and did not send Plaintiff's daughter to the school nurse for care. (*Id.*). Plaintiff called the HWPD to report the gym teacher for aggravating her daughter's injury and refusing to provide her appropriate medical care. (*Id.*). An officer responded but refused to take the report. (*Id.*). Plaintiff further contacted a HWPD supervisor, Jefferson County DHR, and Jefferson County District Attorney Brandon Falls, but all refused to investigate the incident. (*Id.*).

The next day, Plaintiff contacted the nurse at her daughter's school regarding actions of the gym teacher. (*Id.* at 9, 28). The nurse told Plaintiff that her daughter had been confined by herself in the library during recess and gym class, which made her depressed. (*Id.* at 9-10, 28).

Plaintiff alleges that this was done to retaliate against her for reporting the gym teacher's actions to the police and DHR. (*Id.* at 9, 28).

On September 5, 2013, Plaintiff received a phone call from her daughter's principal, Abbie Freeman. (*Id.* at 10, 28). During the call, Plaintiff threatened Abbie Freeman with legal action if the alleged abuse against Plaintiff's daughter continued. (*Id.* at 10, 28-29). After the phone call, Abbie Freeman retaliated against the Plaintiff by making a false police report to Officer Blackman of HWPD, claiming Plaintiff had threatened her during the call. (*Id.*).

In November 2013, Plaintiff was arrested for felony animal cruelty. (*Id.* at 7, 11, 29). While awaiting trial on the charges, the HWPD and Jefferson County Sherriff's Office attempted to manufacture false evidence against Plaintiff. (*Id.* at 11).

Following her arrest, Plaintiff's neighbors, including the alleged victims of the felony animal cruelty charge, continued to harass and threaten her. (*Id.* at 11, 29). Plaintiff's property was stolen and destroyed, she was threatened with physical harm both in person and via social media, and access to her driveway was blocked on multiple occasions. (*Id.*). Plaintiff reported these acts to the HWPD. (*Id.*). However, the HWPD refused to file a report, investigate the allegations, and protect Plaintiff from the harassment and threats. (*Id.*).

 On August 2, 2014, while Plaintiff was attempting to remove an illegal structure built on her property, Plaintiff's neighbor threw a ceramic tile at her, striking her in the arm. (*Id.* at 8, 29). Officer Newland of the HWPD responded to the incident. (*Id.*). Officer Newland refused to make a report or investigate the matter, and threatened Plaintiff with arrest if "he had to return." (*Id.*).

Plaintiff was sexually assaulted in her home by Michael Ward ("Ward") on July 21, 2015. (*Id.* at 11-12, 29). Plaintiff had no memory of any sexual encounter, but Ward confirmed, via text message, that they had engaged in unprotected intercourse. (*Id.* at 12, 29). Plaintiff later

discovered that she had become pregnant as a result of the sexual assault. (*Id*. at 12). After learning of the pregnancy, Ward began making threats toward Plaintiff, requesting she abort the pregnancy and telling her not to seek child support. (*Id.*).

After a text conversation with Ward, which Plaintiff contends serves as proof of the sexual assault, she reported the sexual assault to the Jefferson County Sheriff's Office.[6] (*Id.* at 13, 29). Deputies Therrall and Mayes of the Jefferson County Sheriff's Office refused to review evidence which Plaintiff provided or investigate the sexual assault. (*Id.*). Instead, they told Plaintiff that she would need to file the report with the HWPD. (*Id.*).

Plaintiff subsequently reported the sexual assault to the HWPD, and the case was assigned to Detective Godwin. (*Id.* at 13-14, 29). Detective Godwin did not view Plaintiff's evidence of the sexual assault, take Plaintiff's statement, or interview Ward. (*Id.* at 14, 29). Ward, along with his attorney Marcus Jones, provided false evidence, in the form of either text messages or emails, to Detective Godwin to undermine Plaintiff's sexual assault claim. (*Id.* at 15, 29). In July 2016, Detective Godwin closed Plaintiff's sexual assault case due to lack of evidence, Plaintiff's delay in reporting the sexual assault, and the evidence (which Plaintiff contends is false) provided by Ward and his attorney, Marcus Jones. (*Id.* at 15, 29-30). Ward later filed charges against Plaintiff for harassing text messages. (*Id.* at 16, 30). Plaintiff alleges these text messages included health updates on Ward's unborn child as well as "fake" messages. (*Id.*).

In August 2016, Deputy Sloan of the Jefferson County Sheriff's Office served Plaintiff with a search warrant for her vehicle. (*Id.*). The search warrant was related to an animal cruelty investigation regarding the alleged poisoning of Ward's dog in March 2016. (*Id.* at 16-17, 30).

---

[6] On page 13 of Plaintiff's Second Amended Complaint, Plaintiff states the report of sexual assault was made to the Jefferson County Sheriff's Office on September 21, 2015. (*Id.* at 13). However, Plaintiff subsequently states the date the report occurred was in August 2015. (*Id.* at 13, 29).

Plaintiff alleges that Deputy Sloan, at the direction of Ward and his attorney Jones, delayed serving the warrant until August to prevent "tip[ping] off" Plaintiff to the case being built against her. (*Id.* at 17, 30). This allowed Ward and his attorney to build a stronger case against her. (*Id.*). After discovering evidence which she believed indicated that the steering column of her vehicle had been tampered with, Plaintiff reported that vehicle to the HWPD that her vehicle had been stolen. (*Id.* at 18-19, 31).

On August 19, 2016, Plaintiff returned home from vacation to discover her home had been invaded using a spare key that she kept inside her daughter's treehouse. (*Id.*). Plaintiff later discovered that paperwork containing information she had gathered on Ward was missing from her home. (*Id.* at 18, 30). Plaintiff's home was invaded a second time on September 18, 2016. (*Id.* at 19-20, 31). This lead Plaintiff to discover that the locks on her home had been tampered with. (*Id.* at 20, 31). Plaintiff reported this tampering to Officer Kidd of the HWPD. (*Id.*).

In December 2016, when reviewing video on her surveillance system, Plaintiff discovered recorded footage of the suspected home invasions and footage from the night of the vehicle theft. (*Id.* at 21, 32). The footage showed that the intruder "put anti-freeze in Plaintiff's coffee creamer" and left the residence with the missing paperwork which contained information on Ward. (*Id.* at 21, 30, 32). Plaintiff turned over a copy of the video to the HWPD, along with a photo of Ward wearing clothing similar to those worn by the suspect in the video. (*Id.* at 21, 32). The case was assigned to Detective Godwin. (*Id.* at 21).

In January 2017, Plaintiff spoke to Detective Hampton of the HWPD requesting the home invasion case be reassigned to another detective due to Plaintiff's negative history with Detective Godwin. (*Id.* at 21, 32). Plaintiff further requested that Detective Hampton reopen her sexual

assault case against Ward in light of Detective Godwin's mishandling of the investigation. (*Id.*) Detective Hampton refused both requests. (*Id.*).

Plaintiff's home invasion case was assigned to Detective Furgeson of the HWPD. (*Id.* at 21). Detective Furgeson contacted Plaintiff and informed her that a warrant could not be served against Ward because the suspect in the video could not be identified; however, Furgeson stated that the district attorney had requested more video footage of the nights of the home invasions. (*Id.* at 22, 32). Plaintiff asked Detective Ferguson to contact her attorney to gather more evidence and assist in discovering the identity of a man who had messaged Plaintiff on a dating website on the night of the first home invasion. (*Id.* at 20, 22, 32). Detective Ferguson later contacted Plaintiff to inform her that he had not investigated the dating website and would close the case without additional evidence. (*Id.* at 22, 32).

## II.     Standard of Review

The Federal Rules of Civil Procedure require only that the complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Still, the complaint must include enough facts "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards, nor do pleadings suffice that are based merely upon "labels and conclusions" or "naked assertion[s]" without supporting factual allegations. *Twombly*, 550 U.S. at 555, 557. In deciding a Rule 12(b)(6) motion to dismiss, courts view the allegations in the complaint in the light most favorable to the nonmoving party. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007).

To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although "[t]he plausibility standard is not akin to a 'probability requirement,' " the complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A plausible claim for relief requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Twombly*, 550 U.S. at 556. After *Iqbal*, which applied the *Twombly* pleading standard in a civil rights/qualified immunity context, "there is no longer a 'heightened pleading' standard in 'cases governed by Rule 8(a)(2), including civil rights [cases]' under § 1983." *Saunders v. Duke*, 766 F.3d 1262, 1266 (11th Cir. 2014) (quoting *Randall v. Scott*, 610 F.3d 701, 710 (11th Cir. 2010)). The Supreme Court has recently identified "two working principles" for a district court to use in applying the facial plausibility standard. First, in evaluating motions to dismiss, the court must assume the veracity of well-pleaded factual allegations; however, the court does not have to accept as true legal conclusions when they are "couched as . . . factual allegation[s]." *Iqbal*, 556 U.S. at 678. Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679.

Application of the facial plausibility standard involves two steps. Under prong one, the court must determine the scope and nature of the factual allegations that are well-pleaded and assume their veracity; and under prong two, the court must proceed to determine the claim's plausibility given the well-pleaded facts. That task is context specific and, to survive the motion, the allegations must permit the court based on its "judicial experience and common sense . . . to infer more than the mere possibility of misconduct." *Id.* If the court determines that well-

pleaded facts, accepted as true, do not state a claim that is plausible, the claims are due to be dismissed. *Id.*

Nevertheless, "*pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys, and will, therefore, be liberally construed." *Hughes v. Lott*, 350 F.3d 1157, 1160 (11th Cir. 2003). Therefore, "wildly implausible allegations in the complaint should not be taken to be true, but the court ought not penalize the litigant for linguistic imprecision in the more plausible allegations." *Miller v. Donald*, 541 F.3d 1091 (11th Cir. 2008).

## III. Analysis

The court will address Plaintiff's claims against each Defendant, in turn.

### A. Count One

Count One of Plaintiff's Amended Complaint is styled generally as claim for "violation of civil rights." After careful review, the court concludes that Count One could best be construed as seeking relief under the Equal Protection Clause, Fourth Amendment, and Due Process theories.

#### 1. Defendant Sheriffs Cannot be Sued in their Official Capacity

Count One of Plaintiff's Amended Complaint seeks monetary damages[7] against all Defendants. However, Plaintiff brings this action against Defendants Therrell, Mayes, Sloan, Scott, and Hale only in their official capacities as Deputy Sheriffs and Sheriff.

The Eleventh Amendment to the United States Constitution insulates a state from suit in federal court unless the state either consents to suit or waives its Eleventh Amendment immunity. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-100 (1984).

---

[7] Count One of Plaintiff's Second Amended Complaint alleges that the purported violation of her constitutional rights resulted in monetary damages, "and otherwise." (Doc. # 29 at 33). Because Count Three of her Second Amended Complaint specifically seeks injunctive relief based on the alleged deprivation of her rights, the court construes Count One of Plaintiff's Second Amend Complaint as one seeking monetary damages.

"Lawsuits against a state official in his or her official capacity are suits against the state when 'the state is the real, substantial party in interest.'" *Carr*, 916 F.2d at 1524 (quoting *Halderman*, 465 U.S. at 101). Thus, "[a] state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity . . . or Congress has abrogated the state's immunity." *Lancaster v. Monroe Cty., Ala.*, 116 F.3d 1419, 1429 (11th Cir. 1997) (internal citations omitted). "Alabama has not waived its Eleventh Amendment immunity . . . and Congress has not abrogated Alabama's immunity." *Id.* (internal citations omitted). In Alabama, "a sheriff is an executive officer of the state of Alabama, and thus is immune from lawsuits under the state constitution, except for [certain] injunctive actions . . . ." *Carr*, 916 F.2d at 1525 (citing *Parker v. Amerson*, 519 So. 2d 442, 443 (Ala. 1987)). Because a deputy is a general agent of the sheriff and considered a legal extension of the sheriff, Alabama deputies also enjoy this immunity. *Carr*, 916 F.2d at 1526. As an Alabama sheriff and deputies, Defendants have sovereign immunity under the Eleventh Amendment with respect to money damages claims brought against them in their official capacities. *See id.*

> **2.  The Statute of Limitations Precludes Plaintiff from Recovering Relief for Claims which Accrued More than Two Years Prior to the Initiation of this Action**

Plaintiff initiated this action by filing her original complaint on September 6, 2016. To the extent that Plaintiff complains that actions which occurred more than two years prior to that date violated her constitutional rights, those claims are barred by the statute of limitations. The proper statute of limitations for a § 1983 action is the forum state's general or residual statute of limitations for personal injury. *See Owens v. Okure*, 488 U.S. 235, 236, 249-50 (1989). The residual statute of limitations for personal injury in Alabama is two (2) years. Ala. Code § 6-2-38(1) (1975).

Again, Plaintiff has alleged a wide array of facts which she contends support her claim that she has suffered a number of violations to her constitutional rights. However, the two year statute of limitations bars claims which purportedly arose prior to September 6, 2014. Accordingly, to the extent Plaintiff's claims rely on the investigations involving Klanaris and Hirschfield, the knife threat at Publix, her collapsed retaining wall, her daughter's injury, her November 2013 animal cruelty arrest, and the "illegal structure" she found on her property, they are barred by the statute of limitations. Only the investigations related to the alleged sexual assault of Plaintiff, Ward's charges against Plaintiff, and the alleged invasion of Plaintiff's home involve conduct which occurred within the two year limitations period.

### 3. Plaintiff has no Independent Constitutional Right to Police Investigation of Her Complaints

Construed liberally, Plaintiff's Second Amended Complaint alleges a variety of ills which befell her, and seeks relief from various officials for failing to investigate or otherwise properly respond to her complaints. However, law enforcement officers have no affirmative constitutional duty to investigate an incident. *Royster v. Brown*, 2007 WL 433089, at *3 (N.D. Fla. Feb. 5, 2007) (collecting cases).[8] "The [Supreme] Court's… decisions consistently hold that

---

[8] The *Royster* court cited the following authority in support of the premise that law enforcement officers have no affirmative constitutional duty to investigate complaints:

> *Andrews v. Fowler*, 98 F.3d 1069, 1078-79 (8th Cir. 1996) (dismissing civil rights claim against police chief for failing to investigate plaintiff's rape; holding that failure to investigate "did not rise to the level of a separate constitutional violation of [the plaintiff's] rights."); *Gomez v. Whitney*, 757 F.2d 1005, 1006 (9th Cir. 1985) (stating "we can find no instance where the courts have recognized inadequate investigation as sufficient to state a civil rights claim unless there was another recognized constitutional right involved."); *Beard v. O'Neal*, 728 F.2d 894, 899 (7th Cir. 1984); *Fulson v. Columbus*, 801 F.Supp. 1, 6 (S.D. Ohio 1992); *Doe v. Pocomoke City*, 745 F. Supp. 1137, 1139 (D. Md. 1990); *Moses v. Kennedy*, 219 F.Supp. 762 (D.D.C. 1963) (holding that a private citizen does not have a constitutional right to have his claim investigated and prosecuted by the FBI), *aff'd sub nom.*, *Moses v. Katzenbach*, 342 F.2d 931 (D.C. Cir. 1965); *Lovoi v. F.B.I.*, No. 99-3563, 2000 WL 33671769, at *2 n. 4 (E.D. La. 2000) ("Citizens do not enjoy a constitutional right to have their claims investigated by federal or local executive officials.").

*Royster*, 2007 WL 433089, at *3.

a citizen lacks standing to contest the policies of the prosecuting authority when he himself is neither prosecuted nor threatened with prosecution." *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973). The court will examine whether Plaintiff has alleged any violation of an independently recognized constitutional violation below. However, to be clear, allegations of "inadequate investigations" alone do not raise any constitutional right to relief.

> **4.** **Count One of Plaintiff's Second Amended Complaint Does Not State a Claim for Relief Under the Due Process Clause**

Count One of Plaintiff's Second Amended Complaint can be construed to seek relief for alleged due process violations. (Doc. # 29 at 33). The Due Process Clause of the Fourteenth Amendment prohibits state action that deprives "any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV. To establish a due process violation, a plaintiff must show that she was deprived of an interest cognizable under the Due Process Clause, and that the procedures attendant upon that deprivation were not constitutionally sufficient. *Kentucky v. Dep't of Corrections v. Thompson*, 490 U.S. 454 (1989); *Board of Regents v. Roth*, 408 U.S. 564, 571 (1972).

The Due Process Clause encompasses two components: a substantive component and a procedural component. The substantive component of the Due Process Clause protects only "fundamental" rights. *See McKinney v. Pate*, 20 F.3d 1550, 1556 (11th Cir. 1994) (citing *Palko v. Connecticut*, 302 U.S. 319, 325 (1937)). Fundamental rights "are protected against certain government actions regardless of the fairness of the procedures used to implement them." *McKinney*, 20 F.3d at 1556. By contrast, "areas in which substantive rights are created only by state law ... are not subject to substantive due process protection ... because substantive due process rights are created only by the Constitution." *Id.* Such state law-based rights can be rescinded "so long as the elements of procedural—not substantive—due process are observed."

*Id.* Property interests are created and defined by state law rather than the Constitution. *See Greenbriar Vill., L.L.C. v. Mountain Brook City*, 345 F.3d 1258, 1262 (11th Cir. 2003) (citing *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)). "[N]on-legislative deprivations of state-created rights... cannot support a substantive due process claim, not even if the plaintiff alleges that the government acted arbitrar[il]y and irrationally." *Greenbriar Vill.*, 345 F.3d at 1263. State created rights are not fundamental rights, and thus are not entitled to substantive due process protection. *See id.* at 1262–63 ("[N]on-legislative deprivations of state-created rights... cannot support a substantive due process claim.*")*; *see also Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 229 (1985) (Powell, J., concurring) ("While property interests are protected by procedural due process even though the interest is derived from state law rather than the Constitution...substantive due process rights are created only by the Constitution.").

With respect to the procedural component of the Due Process Clause, "no procedural due process claim exists until a sufficiently certain property right under state law is first shown." *Greenbriar Vill.*, 345 F.3d at 1265. Moreover, the Supreme Court has unequivocally held that an unauthorized intentional deprivation of property by a state actor does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984).

The Supreme Court has refused to recognize a substantive due process right to governmental aid or protection, except in certain limited circumstances. *Harder v. Hunter*, 572 F. App'x 904, 906 (11th Cir. 2014) (citing *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 201-02 (1989)). The rare exceptions in which such a substantive due process right exists typically involve instances where the government has control over the individual who has

the right.  *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976) (finding the government has an affirmative responsibility under the Eighth Amendment to provide adequate medical care to incarcerated prisoners); *Youngberg v. Romeo*, 457 U.S. 307, 324 (1982) (finding the government has an affirmative duty under the Fourteenth Amendment to ensure the safety of involuntarily committed mental patients).  Plaintiff has clearly failed to allege such a situation here, and her Second Amended Complaint does not assert a viable substantive due process claim.

Of course, a claimant may nonetheless assert a procedural due process claim if she has pled that the state failed to protect her liberty or property interests.  Here, Plaintiff has not.  In a similar case, this Circuit has held that individuals do not have a cognizable property interest to have law enforcement investigate their allegations under Florida law.  *Harder*, 572 F. App'x at 907.  The court reasoned that there is a "tradition of police discretion" under state law, and a benefit "is not a protected entitlement if government officials may grant or deny it in their discretion."  *Id.* (quoting *Town of Castle Rock, Colorado v. Gonzales*, 545 U.S. 748, 756, 759, 761 (2005)).  Plaintiff has not pointed to, and the court has not found, any Alabama law which runs counter to this reasoning.  In fact, to the contrary, law enforcement officers in Alabama have the discretion to investigate cases and determine whether (or not) to make arrests.  *State v. Johnson*, 682 So. 2d 385, 387 (Ala. 1996).  *Cf. Town of Castle Rock, Colo.*, 545 U.S. at 760-62 (finding that even "seemingly mandatory legislative commands" did not create a cognizable property interest due to the deep-rooted nature of law-enforcement discretion).  Because law enforcement officials have such discretion in Alabama, Plaintiff does not have a constitutionally protected property or liberty interest at stake, and she has failed to state a due process claim under § 1983.

### 5. Count One of Plaintiff's Second Amended Complaint Fails to State a Claim for Violations of the Fourth Amendment

Count One of Plaintiff's Second Amended Complaint alleges that Defendants violated Plaintiff's "right to be free from unreasonable seizures," and that they conducted an "unlawful arrest and prosecution without probable cause." (Doc. # 29 at 33). It is axiomatic that an arrest without probable cause may form the basis of a § 1983 claim. *Marx v. Gumbinner*, 905 F.2d 1503, 1505 (11th Cir. 1990). Similarly, a Fourth Amendment "search" must be supported by probable cause. *See Steagald v. United States*, 451 U.S. 204, 206 (1981).

Again, the two year statute of limitations precludes Plaintiff from seeking relief for much of the alleged misconduct which could be construed to support her Fourth Amendment based claims.[9] Moreover, it is difficult to discern the exact nature of the conduct which Plaintiff alleges occurred within the applicable statute of limitations. However, liberally construed, Plaintiff's Second Amended Complaint alleges that Homewood swore out a warrant[10] against her which was supported, in part, by fabricated evidence which Ward had supplied. (Doc. # 29 at 16). Moreover, while officers could have executed the warrant in March (presumably by arresting Plaintiff or searching her vehicle), Deputy Sloan did not search Plaintiff's vehicle until August 18, 2016, because Ward had asked for more time to "build a case" against Plaintiff. (*Id.*).

However, even if these facts are taken as true, they do not plausibly plead a violation of the Fourth Amendment which would be actionable under § 1983. While Plaintiff contends that an official associated with Homewood[11] swore out a warrant against her based on false evidence

---

[9] For example, Plaintiff's allegations regarding her November 2013 arrest, including the investigation leading up to that arrest, detail events which occurred more than two years prior to the filing of this complaint.

[10] Plaintiff alternates between referring to the warrant as an arrest warrant and a search warrant. (*See* Doc. # 29 at 17). This distinction is largely without a difference here, however, as a showing of probable cause must be made to secure either type of warrant.

[11] Plaintiff does not name the individual Defendant who was responsible for procuring the warrant.

provided by Ward, the Fourth Amendment does not protect against instances where an official reasonably relies on false information provided by a witness in support of the probable cause determination.[12] *Joseph v. Kimple*, 343 F. Supp. 2d 1196, 1202 (S.D. Ga.), *aff'd*, 391 F.3d 1276 (11th Cir. 2004). While Plaintiff contends that she would have stopped certain communications with Ward had she known that Ward was attempting to build a case against her for "harassing communications," the law simply does not impose an affirmative duty on law enforcement to swear out an arrest or search warrant as soon as possible after probable cause first arises.[13]

Finally, Plaintiff contends that she was unlawfully arrested and prosecuted. (Doc. # 29). However, besides this conclusory allegation, she offers no plausibly pled basis to support her claims. Again, her November 2013 arrest occurred outside of the applicable statute of limitations period, and thus cannot serve as the basis of a § 1983 false arrest claim. Plaintiff has not alleged that she has been arrested as a result of the August 2016 search of her car; and, even if she had, she has alleged that the search was supported by evidence provided by Ward (which she contends was fabricated).

Moreover, Plaintiff's allegations regarding the August 2016 search of Plaintiff's car simply do not support a constitutional claim for malicious prosecution.

---

[12] An exception to this rule exists. A police official who knowingly or recklessly uses false or misleading statements to support a warrant or probable cause showing may be liable for Fourth Amendment violations, and further may lose immunity from suit. *Garmon v. Lumpkin County, Georgia*, 878 F.2d 1406, 1410-11 (11th Cir. 1989); *Kelly v. Curtis*, 21 F.3d 1544, 1554 (11th Cir. 1994). Plaintiff has made no such allegations here. She has not alleged any plausible basis to suggest that Defendant Sloan, or any other Defendant, knew that Ward's statements were false and relied on them anyway.

[13] To be sure, a search warrant based on stale information does not create probable cause, and the government "must reveal facts that make it likely that the items being sought are in that place when the warrant issues." *United States v. Harris*, 20 F.3d 445, 450 (11th Cir. 1994) (quoting *United States v. Domme*, 753 F.2d 950, 953 (11th Cir.1985). However, Plaintiff has not pled any facts which would demonstrate the existence of a staleness issue here. To the contrary, she alleges that Sloan searched her car on August 18, 2016 – months after Ward provided a false basis to support such a search. Her Second Amended Complaint provides no reason to believe that her car would not be at her home in August 2016, or that the August 2016 warrant was based on potentially stale information about her car that was obtained months before.

> To establish a federal malicious prosecution claim under § 1983, the plaintiff must prove a violation of his Fourth Amendment right to be free from unreasonable *seizures* in addition to the elements of the common law tort of malicious prosecution…. As to the constituent elements of the common law tort of malicious prosecution, this Court has looked to both federal and state law and determined how those elements have historically developed.

*Wood v. Kesler*, 323 F.3d 872, 881 (11th Cir. 2003) (emphasis in original) (citations omitted). In Alabama, the elements of the common law tort of malicious prosecution are as follows: (1) a prior judicial proceeding was instituted by the present defendant, (2) in the prior proceeding the present defendant acted without probable cause and with malice, (3) the prior proceeding ended in favor of the present plaintiff, and (4) the present plaintiff was damaged as a result of the prior proceeding. *Delchamps, Inc. v. Bryant*, 738 So. 2d 824, 831–32 (Ala. 1999).

Plaintiff's Second Amended Complaint fails to allege a number of these elements. At the outset, Plaintiff's complaint is (at best) unclear regarding whether any of the Defendants have instituted a formal prosecution against her as a result of her issues with Ward and the August 2016 search which she contends amounts to a Fourth Amendment seizure. Moreover, Plaintiff has failed to plausibly plead that any prosecution against her was instituted without probable cause and with malice. And, Plaintiff has not alleged that any prosecution which might have occurred has been ended in her favor. Accordingly, to the extent Plaintiff's Second Amended Complaint can be construed to raise Fourth Amendment claims, those claims are due to be dismissed.

### 6. Count One of Plaintiff's Second Amended Complaint Fails to State a Claim for Violations of the Equal Protection Clause

To state a claim under the Equal Protection clause of the Fourteenth Amendment, a plaintiff typically must plead that (1) she is similarly situated to other persons who received more favorable treatment, and (2) her discriminatory treatment was based on a constitutionally

protected interest such as race or gender. *Jones v. Ray*, 279 F.3d 944, 946-47 (11th Cir. 2001).

A plaintiff must also allege that the defendant acted with the intent to discriminate against her,

and conclusory allegations of personal belief of disparate treatment are insufficient to state a

claim. *Ardis v. Danheisser*, 2014 WL 103232, at *6 (N.D. Fla. Jan. 10, 2014) (citing *McClesky*

*v. Kemp*, 481 U.S. 279, 292 (1987); *E & T Realty v. Strickland*, 830 F.2d 1107, 1113 (11th Cir.

1987); *GJR Inv., Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1367–68 (11th Cir. 1998);

*Coon v. Ga. Pac. Corp.*, 829 F.2d 1563, 1569 (11th Cir. 1987)).

Here, Plaintiff has failed to allege that she was treated differently than a similarly situated

individual, let alone that any such mistreatment occurred as the result of a constitutionally

protected interest. While Plaintiff alleges generally that Jefferson County and Homewood have

policies which "abuse women" and "refuse equal protection to women and minorities" in count

two of her complaint, she fails to allege that she personally was treated differently based on a

constitutionally protected interest. To be sure, Plaintiff's complaint contains a host of allegations

that she reported various incidents to Defendants, but Defendants did not investigate the

incidents. What Plaintiff's complaint does not allege, however, is any fact which would

plausibly suggest that Defendant's determination not to investigate the various occurrences was

based on Plaintiff's race or gender.[14]  Moreover, Plaintiff fails to allege the existence of any

similarly situated comparator.[15]    Accordingly, to the extent Plaintiff's Second Amended

---

[14] To the contrary, when Plaintiff's complaint includes explanations for why her various "cases were closed," even those explanations (*i.e.*, the reasons recited by Plaintiff) do not suggest that she was intentionally treated differently based on a constitutionally protected interest. (*See* Doc. # 29 at 15 (Detective Godwin closed rape case based on lack of drugs in Plaintiff's system, her delay in reporting, and text messages regarding Plaintiff's relationship with Ward); *Id.* at 22 (Detective Furgeson warned that he would close the investigation related to the man emailing Plaintiff if there was not additional evidence supporting Plaintiff's allegations)).

[15] The Equal Protection Clause is also implicated in "class of one" claims. In a class of one claim, a plaintiff "alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Griffin Industries, Inc. v. Irvin*, 496 F.3d 1189, 1202 (11th Cir. 2007) (quoting Robert C. Farrell, *Classes, Persons, Equal Protection, and Village of Willowbrook v. Olech*, 78 Wash.

19

Complaint can be construed to raise equal protection claims, those claims are due to be dismissed.

## B.    Count Two

In Count Two of her Second Amended Complaint, Plaintiff alleges her rights were violated by a state policy or practice. Plaintiff's Second Amended Complaint does not identify which of the Defendants Plaintiff seeks relief against in this count. However, such a claim could only be asserted against a municipality, state entity, or its policymakers.

Plaintiff contends she is due money damages based on what she alleges are unconstitutional policies of the City of Homewood and Jefferson County. (Doc. # 29). That claim is without merit. "The Supreme Court has placed strict limitations on municipal liability under section 1983." *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998). As explained in *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), "a municipality may be held liable for the actions of a police officer only when municipal 'official policy' causes a constitutional violation." *Id.* (citing *Monell*, 436 U.S. at 694-95). So, to hold a municipality liable, Plaintiff "must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004) (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). A policy is defined as a "decision that is officially adopted by the municipality. . . ." *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997) (citing *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1479-80 (11th Cir. 1991)). A custom is defined as a "practice

---

L.Rev. 367, 394 (2003)). Plaintiff's complaint does not include any indication that she intends to pursue a class of one claim. In any event, even if she did intend to pursue such a claim, the same "similarly situated" standard applies. *Id.* at 1204-05. Because Plaintiff's complaint does not identify a similarly situated individual who received more favorable treatment, any attempt to bring a class of equal protection claim would fail as well.

that is so settled and permanent that it takes on the force of law." *Id.* (citing *Monell*, 438 U.S. at 690-94).

Count Two of Plaintiff's complaint fails to get out of the gate. In order to hold a policymaker liable for a policy or practice, Plaintiff must first allege that her constitutional rights were violated. *McDowell*, 392 F.3d at 1289. As addressed above, Plaintiff's Second Amended Complaint fails to do so. Put differently, Plaintiff cannot sue the City of Homewood or Jefferson County based solely based on a purported discriminatory practice. Instead, she must show that she was actually injured as a result of some improper policy or practice. Plaintiff has not plausibly pled that any of her constitutional rights were violated, and as such, she is not entitled to seek damages based on any alleged unconstitutional state policies or practices.

Finally, to the extent Plaintiff seeks to hold Sheriff Hale liable based on his role as a supervisor, that assertion misses the mark. "It is well established in this Circuit that supervisory officials are not liable under [section] 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (quoting *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999)). Of course, supervisory liability under section 1983 may occur "'when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between the actions of the supervising official and the alleged deprivation.'" *Valdes v. Crosb*y, 450 F.3d 1231, 1236 (11th Cir.2006) (quoting *Miller v. King*, 384 F.3d 1248, 1261 (11th Cir. 2004)). But again, Plaintiff has not plausibly pled that she personally suffered a violation of her constitutional rights. Accordingly, to the extent that count two of Plaintiff's Second Amended Complaint attempts to state a claim against Sheriff Hale, it is due to be denied.

### C.    Count Three

Count Three of Plaintiff's Second Amended Complaint does not identify which Defendant(s) she seeks injunctive relief against.  However, construed liberally (and considering Count Three as one pled against all Defendants), Plaintiff's complaint seeks entry of an injunction prohibiting Defendants from performing illegal searches and seizures, and requiring Defendants to create a training program to teach law enforcement officers about victims' rights.

"It goes without saying that those who seek to invoke the jurisdiction over the federal courts must satisfy the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy."  *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983). To demonstrate the existence of Article III standing, a plaintiff must meet three elements:

> First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical[.]'"  Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal citations omitted).

Here, Plaintiff has not plausibly alleged that there is an "actual or imminent" injury she may suffer that would allow for declaratory and injunctive relief.  *Lujan*, 504 U.S. at 560 (quoting *Whitmore v. Arkansas*, 495 U.S. 49, 155 (1990)).  Indeed, as addressed above, while Plaintiff's complaint details her various grievances against Defendants, it does not plausibly plead a single constitutional violation.  And even if her complaint did allege constitutional violations (and plainly it does not) it would merely detail individual incidents of past conduct. The Supreme Court has held that "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing,

present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974). As the court has noted, "past wrongs are evidence bearing on whether there is a real and immediate threat of repeated injury. But here the prospect of future injury rests on the likelihood that [Plaintiff] will again be arrested for and charged with violations of the criminal law and will again be subjected to . . . proceedings, trial, or sentencing" by Defendants. *Id.* at 496. No case or controversy exists simply because Plaintiff anticipates Defendants will commit unlawful searches, seizures, and detentions. *See Lyons*, 461 U.S. at 103. To the contrary, the court "assume[s] that [Defendants] will conduct their activities within the law" and the Constitution. *O'Shea*, 414 U.S. at 497.

Plaintiff's conclusory allegations of the existence of a City policy or ratification of police officers' conduct by the City are simply not enough to establish an actual case or controversy that would allow for declaratory or injunctive relief. *See Lyons*, 461 U.S. at 106-07. Accordingly, Plaintiff lacks standing to seek an injunction related to purported unconstitutional policies, and Count Three of the Complaint is due to be dismissed.

### D.     Plaintiff's Claims Against Jefferson County are Due to be Dismissed

Plaintiff is proceeding in this action *pro se*. (*See* Doc. # 4). With the assistance of the U.S. Marshals service, Plaintiff has served each Defendant except Jefferson County. However, the court need not wait until Plaintiff has served Jefferson County to dismiss this action. In actions where a plaintiff has been granted *in forma pauperis* status, the court is obligated to dismiss the action if it is frivolous, malicious, or fails to state a claim for relief. 28 U.S.C. § 1915(e)(2)(B)(i) & (ii). The court conducts the review required by 28 U.S.C. § 1915(e)(2)(B)(ii) using the standards applied to motions under Federal Rule of Civil Procedure 12(b)(6). *Alba v. Montford*, 517 F.3d 1249, 1252 (11th Cir. 2008).

As addressed above, Plaintiff's Second Amended Complaint fails to state a claim against any of the named Defendants. She has not plausibly pled the existence of a constitutional violation and lacks standing to pursue her claim for injunctive relief. Accordingly, this action is due to be dismissed against all Defendants, including Jefferson County.

### E. Any Attempt by Plaintiff to Amend the Pleadings Would be Futile

While Plaintiff has not sought leave to amend her complaint, there are certain instances where it is appropriate to offer a plaintiff (particularly one proceeding *pro se*) an opportunity to amend her complaint *sua sponte*. **"**Where a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district judge dismisses the action with prejudice." *Cornelius v. Bank of Am., NA*, 585 F. App'x 996, 1000 (11th Cir. 2014) (citing *Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir. 1991)). However, this matter is before the court on Plaintiff's Second Amended Complaint. Plaintiff filed her initial complaint on September 6, 2016. (Doc. # 1). A number of Defendants filed motions to dismiss which raised many of the issues now before the court. (*See* Docs. # 13, 14, 15). When this action was reassigned to the undersigned, the court entered an order denying the motions to dismiss without prejudice, identifying the pleading errors contained in Plaintiff's complaint, and directing Plaintiff to amend her complaint.[16] (Doc. # 23). When Plaintiff filed her Amended Complaint, which was missing pages and unsigned, the court again directed Plaintiff to amend her complaint. The court has granted Plaintiff the opportunity to amend her complaint to state a claim upon which relief may be granted, but to no avail.

Finally, even if Plaintiff were entitled to another opportunity to amend her complaint, "[w]hile a *pro se* litigant generally must be given at least one opportunity to amend his

---

[16] The court's order warned Plaintiff that "[f]ailure to file an Amended Complaint as directed may result in this action being dismissed for failure to state a cause of action upon which relief can be granted or for lack of prosecution." (Doc. # 23 at 3).

complaint, a district judge need not allow an amendment where amendment would be futile." *Id.* (citing *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007) (per curiam)). Here, any further amendment of Plaintiffs' complaint would be futile, and her complaint is due to be dismissed without leave to further amend. *See Cockrell v. Sparks*, 510 F.3d at 1310 ("Leave to amend a complaint is futile when the complaint as amended would still be properly dismissed or be immediately subject to summary judgment for the defendant."). Simply put, Plaintiff's complaint does not allege constitutional deficiencies – the defects in her complaint are not issues of form, but of substance. Plaintiff alleges that a variety of private actors harmed her, but seeks to hold various law enforcement officials liable for not doing more to protect her. As pled, Plaintiff's claims do not raise a right to relief, and no amount of re-pleading will address the fundamental flaws of Plaintiff's allegations.

## IV. Conclusion

For the reasons stated above, Defendants' motions to dismiss are due to be granted, and this action is due to be dismissed. A separate order will be entered.

**DONE** and **ORDERED** this August 4, 2017.

R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE